## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____ )
UNITED STATES OF AMERICA,　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　*Plaintiff*,　　　　　 )
　　　　　　　　　　　　　　　　　　　　　 )
　　　　v.　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　　 )　　Civil Action No. 13-127 (RWR)
ANHEUSER-BUSCH InBEV SA/NV　　　　　　 )　　Judge Richard W. Roberts
　　　　　　　　　　　　　　　　　　　　　 )
and　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　　 )
GRUPO MODELO S.A.B de C.V.,　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　*Defendants*.　　　　 )
_____ )

## MEMORANDUM IN SUPPORT OF CONSTELLATION BRANDS, INC.'S AND CROWN IMPORTS LLC'S MOTION TO INTERVENE

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ iii

I. PRELIMINARY STATEMENT ..................................................................................1

II. BACKGROUND.........................................................................................................4

    A.     The Status Quo and the Proposed Transactions...................................................4

          1.     The Status Quo Among ABI, Modelo and Crown.......................................4

               (a)     ABI's Historical Relationship with Modelo ...................................4

               (b)     Modelo's Relationship with Crown .................................................5

               (c)     The Current Modelo Supply Agreement..........................................5

          2.     The Proposed Transactions ........................................................................5

               (a)     ABI's Proposed Purchase of the Remaining Interest in Modelo's Production Assets and Brands .........................................5

               (b)     Modelo's Sale of Its Interest in Crown to Constellation.................6

               (c)     ABI's Continued License of Brands to Crown and Related Supply Agreement ...........................................................................6

    B.     Plaintiff's Section 7 Allegations ........................................................................7

          1.     How the Parties and Crown Currently Participate in the Sale of Beer in the United States.........................................................................7

               (a)     ABI...................................................................................................7

               (b)     Modelo .............................................................................................7

                (c)     Crown..............................................................................................8

          2.     The Alleged Consolidation in the Putative Market for the Sale of Beer in the United States.........................................................................8

          3.     The Alleged Harm From the Vertical Supply Arrangement.......................9

III. ARGUMENT .............................................................................................................10

    A.     Rule 24 Standards and the Relevant Framework for this Section 7 Case.............10

       1.       Standard for Motions to Intervene under Rules 24(a) and 24(b) ...............10

       2.       The Section 7 Application to the Proposed Transactions ..........................11

B.      Constellation and Crown Are Entitled to Intervene As a Matter of Right.............11

C.      Alternatively, the Court Should Grant Permissive Intervention............................13

       1.       Will the Proposed Transactions Combine ABI's and Crown's Market Shares in the Sale of Beer in the United States? ...........................13

       2.       Will Crown Be Less Competitive When it is Wholly-Owned by Constellation? ...........................................................................................14

       3.       Will the Vertical Supply Agreement Between ABI and Crown Harm Competition?....................................................................................14

       4.       Whether There Can Be Any Anticompetitive Effect From the Transactions, Given the Vigorous Level of Competition in the High-End Beer Segment? ........................................................................15

CONCLUSION..........................................................................................................................16

**TABLE OF AUTHORITIES**

**Page(s)**

<u>CASES</u>

*Atlantic Sea Island Group LLC v. Connaughton*, 592 F. Supp. 2d 1 (D.D.C. 2008) ...................10

*\*FTC v. Arch Coal, Inc.*, No. 04-0534 (JDB) (D.D.C. July 7, 2004) .......................................2, 11

*FTC v. Arch Coal, Inc.*, 329 F. Supp. 2d 109 (D.D.C. 2004) ...................................................8, 11

*\*FTC v. Libbey, Inc.*, 211 F. Supp. 2d 34 (D.D.C. 2002) .........................................................2, 11

*FTC v. Tenet Health Care Corp.*, 186 F.3d 1045 (8th Cir. 1999) .................................................11

*Karsner v. Lothian*, 532 F.3d 876 (D.C. Cir. 2008) .......................................................................10

*Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191 (D.D.C. 2002) .....................................................4

*Hinton v. Corrections Corp. of America*, 624 F. Supp. 2d 45 (D.D.C. 2009) ...............................4

*\*Nuesse v. Camp*, 385 F.2d 694 (D.C. Cir. 1967) .......................................................................13

*Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1998) ......................................................................4

*Tripp v. Executive Office of the President*, 194 F.R.D. 344 (D.D.C. 2000) .................................10

*United States v. Oracle Corp.*, 331 F. Supp. 2d 1098 (N.D. Cal. 2004) .........................................8

*United States v. Sunguard Data Systems, Inc.*, 172 F. Supp. 2d 172 (D.D.C. 2001) ...................11

<u>STATUTES</u>

15 U.S.C. § 18 .................................................................................................................................11

Fed. R. Civ. P. 24(a)(2) ..................................................................................................................10

Fed. R. Civ. P. 24(b)(1)(B) ............................................................................................................10

Fed. R. Civ. P. 24(b)(3) ..................................................................................................................10

# I.
# PRELIMINARY STATEMENT

Defendants Anheuser-Busch InBev SA/NV ("ABI") and Grupo Modelo S.A.B de C.V. ("Modelo") respectfully submit this memorandum in support of the motion of Constellation Brands, Inc. ("Constellation") and Crown Imports LLC ("Crown") to intervene as parties in the present action pursuant to Federal Rule of Civil Procedure 24.

As described in more detail below, Plaintiff's case, at a minimum, raises four issues that are common to ABI, Modelo, Constellation and Crown:

*First*, whether the proposed transactions can even be characterized as a "combination" of ABI's and Crown's market shares for beer sales in the United States, given that Crown will remain an independent horizontal competitor of ABI;

*Second*, whether, if the Court reaches the issue, Plaintiff can prove that Crown will be less competitive when, following the transactions, it will be wholly-owned by Constellation;

*Third,* whether Crown is at all disadvantaged as a competitor of ABI when, as a result of the transactions, it will obtain a better and effectively perpetual supply agreement for the import of Modelo beers; and

*Fourth*, whether in the highly competitive high-end beer segment in which Crown sells Corona, there can be any anticompetitive effect given the substantial competition from other high-end beers, including Heineken, Dos Equis, Sam Adams, Blue Moon, Tecate and a host of other craft and imported beers.

This is a case that arises out of a Department of Justice ("DOJ") investigation of two proposed related transactions that will close simultaneously.  In one transaction, ABI will purchase the remaining shares of Modelo that it does not already own.  Starting in 1993, ABI has acquired (through multiple transactions subject to DOJ review) 50.35% of Modelo's equity, nine of nineteen board seats and various governance rights, including approval rights on capital expenditures and annual budgets.  As a result of this transaction, ABI will own the Modelo brands and run Modelo's beer production operations in Mexico.

1

In the related transaction, Modelo will sever its current relationship with Crown, a 50/50 joint venture between Modelo and Constellation, which is the exclusive importer of Modelo brands (e.g., Corona) into the United States.  Modelo will sell its 50% interest to Constellation, leaving Constellation as the sole owner of Crown.  Crown still will remain the sole importer and seller of Modelo brands in the United States pursuant to an extension of its long-term license and supply agreement that guarantees Crown's supply of Modelo brand beers on highly preferential terms.

The current motion of Constellation and Crown to intervene must be considered in the context of both transactions.  Under the relevant authority in this district, the DOJ must prove a violation of Section 7 of the Clayton Act with reference to the net effect of both proposed transactions.  *See FTC v. Arch Coal, Inc.*, No. 04-0534 (JDB) (D.D.C. July 7, 2004); *FTC v. Libbey, Inc.*, 211 F. Supp. 2d 34 (D.D.C. 2002).  Indeed, the DOJ treated both Constellation and Crown as integral parties to its seven-month-long investigation; they are parties to the timing agreement between the DOJ and the Defendants (that, in part, set the parameters of the current litigation); their counsel attended meetings with the DOJ; their executives were invited to present their views to the DOJ; their documents were subpoenaed; and their employees were deposed.  Further, perhaps the most central question to be adjudicated in this action is Crown's competitive role once it becomes a wholly-owned subsidiary of Constellation.  Notwithstanding these facts, Plaintiff chose *not* to name either Constellation or Crown as a party in the present case.

Based on Plaintiff's Complaint alone, it is readily apparent that Constellation and Crown should be permitted to intervene under Rule 24, either as a matter of right or in this Court's discretion.  First and foremost, as a matter of right under Rule 24(a)(2), the Complaint

directly seeks to prevent Constellation from acquiring full control of Crown and to prevent

Crown, in turn, from obtaining a highly preferential, effectively perpetual supply agreement from

ABI for Modelo brand beer.  Certainly, this renders Constellation and Crown parties with

"interests" in the proposed transactions at issue.  Further, if Plaintiff were to succeed in its effort

to enjoin ABI's acquisition of Modelo, then Modelo would remain the co-owner of Crown and

have the right, in 2013, to exercise a call option and buy Constellation's share in Crown in 2016.

As a result, Constellation likely will exit the U.S. beer industry.  This consequence places

Constellation in a unique position with respect to the outcome of the case.  Consequently, there is

no basis to assume that Constellation's and Crown's interests would be represented with the

same focus and objectives as the current Defendants.

       Finally, as a matter of discretion under Rule 24(b), Constellation's and Crown's

position shares common issues of law and fact with the positions of ABI and Modelo with

respect to Plaintiff's Section 7 claim.  These questions must be assessed in the context of the

Section 7 legal framework, including, critically, the likely effect of both transactions considered

together.  From this perspective, common issues of law and fact will include, *inter alia*:  whether

Plaintiff even can prove an increase in market "concentration" in the *sale* of beer in the United

States, given that ABI and Crown still will compete against each other following the

transactions; whether, post-transactions, Crown will be a vigorous competitor of ABI under

Constellation's sole ownership; whether the new, preferential supply agreement between ABI

and Crown can somehow make Crown a less effective competitor; and whether the high-end beer

business will be any less competitive after the transactions.  These issues warrant permitting

Constellation and Crown to intervene in the case under Rule 24.

# II.
# BACKGROUND

## A.    THE STATUS QUO AND THE PROPOSED TRANSACTIONS

Constellation's and Crown's motion is best understood in the context of the status quo, the proposed transactions and Plaintiff's Section 7 allegations.[1]

### 1.    The Status Quo Among ABI, Modelo and Crown

#### (a)    ABI's Historical Relationship with Modelo

ABI currently owns 50.35% of Modelo as a result of its 35.3% direct ownership interest in Modelo and its 23.3% ownership interest in Modelo's operating subsidiary Diblo, S.A. de C.V.  (Compl. ¶ 19.)  ABI holds 43.9% of Modelo's voting shares, is entitled to appoint nine representatives to Modelo's nineteen-member Board of Directors and has voting rights that subject significant Modelo operations to ABI's approval.  (*Id.*; Corporate By-Laws of Grupo Modelo, S.A.B de C.V. Art. 36 (the "By-Laws"); Investment Agreement by and among Anheuser-Busch Companies, Inc., Anheuser-Busch International, Inc. and Anheuser-Busch International Holdings, Inc. and Grupo Modelo, S.A.B de C.V. and Diblo, S.A. de C.V. and Certain Shareholders Thereof § 7.2(b) (the "Investment Agreement").)  For example, ABI approval is required for ratification of Modelo's operating and capital budget, Modelo's five-year strategic plan and any capital expenditure, multi-year contract or incurrence of debt above $15 million.  (By-Laws Art. 36; Investment Agreement § 7.2(b).)

---

[1] The face of the Complaint includes the relevant transaction documents it incorporates by reference.  *See Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (court may consider "the facts alleged in the complaint [and] documents attached as exhibits or incorporated by reference in the complaint"); *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (court may consider "documents 'upon which the plaintiff's complaint necessarily relies' even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss" (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998))).

**(b)**   **Modelo's Relationship with Crown**

Crown, a 50/50 joint venture between Modelo and Constellation, sells and markets Modelo's brands in the United States as the exclusive importer of its beers. (Compl. ¶ 8 n.1.)  As a result, Modelo must "act[] through Crown" in the United States. (*Id.* ¶¶ 30, 48, 55, 60.)  Modelo has the right to acquire Constellation's 50% interest in Crown in 2016 by exercising a call option prior to the end of 2013.  (*Id.* ¶ 21.)

**(c)**   **The Current Modelo Supply Agreement**

In 2007, Modelo and Crown entered into the existing Importer Agreement, pursuant to which Modelo supplies Crown with beer.  The price of beer supplied to Crown from 2007 until termination is determined, in part, by negotiations between Modelo and Crown. (Importer Agreement between Extrade II, S.A. de C.V. and Crown Imports LLC §§ 5.1-5.5 (the "Importer Agreement").)  In the event of a production shortage, Modelo may choose to prioritize supplying the Mexican market instead of supplying Crown and the U.S. market.  (*Id.* § 4.1.) There is no provision in the agreement that requires Modelo to respond to product or package innovation requests by Crown.  The current agreement also does not provide Crown with the right to distribute in the United States every Modelo brand sold in Mexico.

**2.**   **The Proposed Transactions**

**(a)**   **ABI's Proposed Purchase of the Remaining Interest in Modelo's Production Assets and Brands**

ABI has agreed to purchase the remaining 49.65% equity interest in Modelo that it does not own already for $20.1 billion.  (Compl. ¶ 23.)

**(b)   The Sale of Modelo's Interest in Crown to Constellation**

Contingent upon the closing of ABI's acquisition of Modelo, ABI has agreed to sell Modelo's 50% interest in Crown to Constellation.  (*Id.* ¶ 24.)  As a result, Constellation will wholly own Crown (*id.*), and ABI will have no equity or governance relationship to Crown.

**(c)   ABI's Continued License of Brands to Crown and Related Supply Agreement**

In addition to selling Modelo's existing interest in Crown, ABI will enter into an Amended and Restated Importer Agreement that will "giv[e] Constellation the exclusive right to import Modelo beer into the United States."  (*Id.* ¶ 8.)  This supply agreement is effectively perpetual; although ABI has the right to terminate it after ten years, the cost to terminate— thirteen times earnings before interest and taxes ("EBIT")—likely is prohibitive.  (Amended and Restated Importer Agreement between Extrade II, S.A. de C.V. and Crown Imports LLC § 11.4(d).)

Under the agreement, the prices at which ABI supplies Crown will be set at 2012 levels specified by the current Modelo supply agreement until 2014, after which they will be adjusted according to a formula that will result in declining real prices.  (*Id.* § 5.1.)  The agreement will require ABI to supply Crown with all the product it needs for sale in the United States.  (*Id.* § 4.2.)  If, for any reason, there is insufficient volume for ABI to satisfy its supply obligations to customers, Crown will be guaranteed supply on terms as favorable as any other ABI customer.  (*Id.* § 4.1.)

In addition, Crown will have the right to request the development of one new beer product per year, which ABI must consider in good faith and use commercially reasonable efforts to achieve.  (*Id.* § 4.10(a).)  Crown also will have the right to import and distribute any Modelo brand marketed or sold outside the United States—including the seven brands currently

not imported into the United States. (*Id.* § 3.4(c).) Finally, the supply agreement erects firewalls that will protect sensitive Crown and ABI business information from disclosure beyond necessary personnel. (*Id.* §§ 8.4, 8.5.)

**B.     PLAINTIFF'S SECTION 7 ALLEGATIONS**

While Constellation's and Crown's motion properly references materials outside of the Complaint, Plaintiff's allegations themselves provide ample context for assessing their motion. Taking Plaintiff's factual allegations as true, the Complaint alleges the following:

**1.     How the Parties and Crown Currently Participate in the Sale of Beer in the United States**

**(a)     ABI**

The Complaint alleges that ABI sells beer within four segments of the U.S. beer industry with substantial "price gaps" (Compl. ¶ 39) from lowest to highest: "sub-premium" (e.g., Natural and Keystone); "premium" (e.g., Budweiser, Miller, Coors and light versions); "premium-plus" (largely American-made beers with more expensive ingredients (e.g., Bud Light Lime and Michelob Ultra)), and "high-end" (crafts and imported beers, including Dogfish Head, Flying Dog, Goose Island, Stella Artois and Corona). (*Id.* ¶¶ 28-29.)

**(b)     Modelo**

Modelo produces beer in Mexico, but does not itself market or sell beer in the United States. (*Id.* ¶ 8 n.1.) Modelo executives run the day-to-day business of Modelo in Mexico, but do not run Crown's U.S. business. Instead, Modelo owns 50% of Crown and is represented on Crown's Board of Directors. The Crown Board must approve Crown's "general pricing parameters." (*Id.* ¶ 21.)

**(c)**   **Crown**

According to the Complaint, Crown is a "50/50 joint venture between Modelo and Constellation.  Crown sells and markets Modelo's beers in the United States as the exclusive importer of Modelo beers."  (*Id.* ¶ 8 n.1.)  Following the proposed transactions, Crown still will be the firm that "sells and markets" Modelo brands and still will be the exclusive importer of those brands.  (*See, e.g.*, *id.* ¶¶ 8-10, 74, 77.)

**2.      The Alleged Consolidation in the Putative Market for the Sale of Beer in the United States**

Plaintiff claims that in a putative market for the sale of beer in the United States— and in 26 "local" geographic markets where beer is purchased—the proposed transactions will result in a "presumptive" Section 7 violation based on an increase in market concentration. (*Id.* ¶¶ 31-43.)  Specifically, Plaintiff alleges that ABI brands account for a 39% share of sales of beer in the U.S. market, and Modelo brands, admittedly sold by Crown, account for a 7% share. (*Id.* ¶¶ 39, 42.)  In turn, Plaintiff alleges that, following the transactions, the HHIs[2] in the alleged national market for the sale of beer will increase to over 2800 with a delta of 566.  (*Id.* ¶ 41.)

Plaintiff alleges that Crown, under the sole ownership of Constellation post-transactions, will price less aggressively because Constellation's desire to follow ABI's price leadership "no longer [will] be so constrained" by Modelo.  (*Id.* ¶¶ 72-74.)  According to Plaintiff, Modelo currently has an interest in seeing that Crown builds sales volume so that Modelo can cover its manufacturing costs.  (*Id.* ¶ 73.)  By contrast, Constellation, as Crown's sole owner, will not own a brewery and likely will be "free to follow ABI's lead" without having

---

[2] Market concentration is often measured by the Herfindahl-Hirschmann Index ("HHI"), which is calculated by totaling the squares of the market shares of every firm in a relevant market.  *See United States v. Oracle Corp.*, 331 F. Supp. 2d 1098, 1112 (N.D. Cal. 2004); *FTC v. Arch Coal, Inc.*, 329 F. Supp. 2d 109, 124 (D.D.C. 2004).

to ask Modelo for "permission."  (*Id.* ¶ 77.)  The Complaint does not address how the proposed transactions, including Crown's long-term brand license and supply agreement, affect Constellation's incentives.  Moreover, this tenuous connection seems to be the basis for Plaintiff's position that *all* of Crown's market share should be attributed to ABI after the transactions are completed.

Further, the proposed transactions allegedly will allow ABI to "unilaterally" raise the price of its brands, including "lifting the price of Modelo beers."  (*Id.* ¶ 63.)  (Notably, Plaintiff does not allege *how*, post-transactions, ABI will be able to set the prices of Modelo brands sold in the United States, even though it will have no ownership interest or governance rights in Crown.)  Finally, Plaintiff alleges that the proposed transactions will undermine ABI's incentive and ability to develop new products to "[t]arget Mexican imports," such as Corona. (*Id.* ¶¶ 65-67.)

### 3.  The Alleged Harm From the Vertical Supply Arrangement

Plaintiff also alleges that, post-transactions, the Amended and Restated Importer Agreement between ABI and Crown, pursuant to which ABI will supply Crown with Modelo brands, will "facilitate joint pricing between the two companies."  (*Id.* ¶ 78.)  Plaintiff alleges that ABI could, despite its contractual obligations, terminate the supply agreement "at any time," induce Constellation to raise prices by "withhold[ing] or delay[ing] supply to punish Constellation" or renegotiate the agreement during the ten-year period.  (*Id.* ¶¶ 83-84.)

Separately, Plaintiff alleges that, under the supply agreement, "innovation" would be harmed because ABI would be precluded from launching a "Mexican-style Beer" in the United States.  (*Id.* ¶ 67.)

## III.
## ARGUMENT

**A.     RULE 24 STANDARDS AND THE RELEVANT FRAMEWORK FOR THIS SECTION 7 CASE**

### 1.     Standard for Motions to Intervene under Rules 24(a) and 24(b)

Under Rule 24(a), a "court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). "The D.C. Circuit 'ha[s] identified four prerequisites to interven[tion] as of right: (1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests.'" *Atl. Sea Island Group LLC v. Connaughton*, 592 F. Supp. 2d 1, 6 (D.D.C. 2008) (quoting *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (alterations in original) (citation and internal quotation marks omitted)).

Under Rule 24(b), "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). When considering whether to allow permissive intervention, courts analyze whether the movant has demonstrated "'(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action.'" *Tripp v. Executive Office of the President*, 194 F.R.D. 344, 347 (D.D.C. 2000) (citation omitted). Under Rule 24(b), "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

2.    **Application of Section 7 to the Proposed Transactions**

In applying Rule 24 to the present motion, it is essential to understand the legal framework of Plaintiff's claim.  Section 7 of the Clayton Act prohibits acquisitions "where in any line of commerce . . . the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly."  15 U.S.C. § 18.  "To establish a Section 7 violation, plaintiff must show that a pending acquisition is reasonably likely to cause anticompetitive effects."  *United States v. Sunguard Data Sys., Inc.*, 172 F. Supp. 2d 172, 180 (D.D.C. 2001).  Courts have recognized that "Section 7 deals in probabilities not ephemeral possibilities."  *Arch Coal*, 329 F. Supp. 2d at 115 (quoting *FTC v. Tenet Health Care Corp.*, 186 F.3d 1045, 1051 (8th Cir. 1999)).

Where, as here, a transaction involves multiple agreements, the reviewing court must consider all of the transactions at issue and their cumulative effect.  *See FTC v. Arch Coal, Inc.*, No. 04-0534 (JDB), slip op. at 7 (D.D.C. July 7, 2004) ("[The] Court's task in determining the likelihood of the FTC's success in showing that the challenged transaction may substantially lessen competition in violation of Section 7 of the Clayton Act requires the Court to review the entire transaction in question."); *FTC v. Libbey, Inc.*, 211 F. Supp. 2d 34, 45-46 (D.D.C. 2002) (court required to consider the net effect of the acquisition of the target company and simultaneous sale of certain of the target's assets to a third party).

As described below, applying Rule 24 in the Section 7 framework here requires granting Constellation's and Crown's motion to intervene.

B.    **CONSTELLATION AND CROWN ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT**

Constellation and Crown may intervene here as of right because they "claim[ ] an interest relating to the property or transaction that is the subject of the action" under Rule

24(a)(2).  First, Constellation's and Crown's motion, filed only eight days after Plaintiff's

Complaint, is timely.  Constellation and Crown have been involved in Plaintiff's investigation of

the transactions since July 2012, so they are intimately familiar with the facts and issues to be

litigated.  Indeed, Constellation and Crown are the only sources of certain information necessary

to the litigation, ensuring their involvement going forward.  As a result, Constellation's and

Crown's intervention will not disrupt or prejudice either Plaintiff or the Defendants.

   Second, Constellation and Crown have a significant interest in the subject of this

litigation, and disposition of this matter stands to impair that interest.  Constellation's acquisition

of Crown is subject to ABI successfully acquiring Modelo.  If this Court enjoins ABI's

acquisition of Modelo, it also will effectively enjoin Constellation's acquisition of Crown.  In

that event, it is highly likely that Modelo will exercise its option to buy Constellation's 50%

stake in Crown.  Thus, not only would Constellation be deprived of the tremendous value of a

proposed transaction that has the potential to fortify its beer business, but it also likely would

have to sell its interest in Crown and exit the beer industry entirely.

   Finally, the Defendants will not adequately represent Constellation's and Crown's

interests.  ABI and Modelo share an interest with Constellation and Crown in seeing the

proposed transactions proceed.  But their shared interests end there.  If ABI's acquisition of

Modelo is enjoined, Constellation stands to lose significantly more than ABI or Modelo because

the outcome of the litigation has the potential to impact whether it continues to own Crown and

operate in the beer business.  If the transactions proceed, however, Constellation will continue to

participate in the beer industry through Crown, and Crown will continue to compete, including

against ABI.  Modelo, as an ABI subsidiary, will have no connection with the United States

other than supplying beer to Crown.  Thus, the threats this litigation poses to Constellation differ

substantially from those Modelo or ABI face.  As a result, ABI and Modelo will not adequately

represent Constellation's and Crown's interests.

## C.     ALTERNATIVELY, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION

Rule 24(b) "provides basically that anyone may be permitted to intervene if his

claim[3] and the main action have a common question of law or fact" and so long as intervention

does not delay adjudication of the existing parties' rights.  *Nuesse v. Camp*, 385 F.2d 694, 704

(D.C. Cir. 1967).[4]  Here, Constellation and Crown raise the same common questions of law and

fact regarding whether the proposed transactions, considered together, violate Section 7.  As is

apparent from the face of the Complaint, the Section 7 analysis, at a minimum, requires

resolution of four questions involving the Defendants, Constellation and Crown.

### 1.     Will the Proposed Transactions Combine ABI's and Crown's Market Shares in the Sale of Beer in the United States?

As explained above, the Complaint alleges that the proposed transactions will

increase concentration in the market for the sale of beer in the United States.  Plaintiff alleges

that the transactions will combine ABI's 39% share of beer sales in the United States with the

7% share attributable to Modelo's brands.  (Compl. ¶¶ 2, 39, 42.)  Therefore, if Constellation and

Crown were parties, a question common to all litigants would be whether it is appropriate to

consider the proposed transactions as a horizontal merger in the United States—i.e., if Crown is

ABI's horizontal competitor both before *and after* the transactions, how is there an increase in

concentration?  A subsidiary question is whether, post-transactions, Crown's share of beer sales

---

[3] While "the rule speaks in terms of a 'claim or defense,'" courts do not interpret it "strictly so as to preclude permissive intervention."  *Nuesse v Camp*, 385 F.2d 694, 704 (D.C. Cir. 1967).

[4] As noted above, Constellation and Crown have filed their motion in a timely manner, and there will be no delay in adjudication.  (*See supra* Section III.B.)  Further, this case arises under a federal statute, which provides an independent basis for subject matter jurisdiction.

in the United States properly can be imputed to ABI when ABI (in contrast to Modelo today) will have no equity interest in Crown, no board seats and no involvement in the marketing and sale of Modelo brands in the United States.

### 2. Will Crown Be Less Competitive When it is Wholly-Owned by Constellation?

Plaintiff's theory of harm attributable to ABI's acquisition of Modelo's brewer assets is connected to Constellation's purchase of Modelo's interest in Crown.  Specifically, Plaintiff alleges that when Crown is wholly-owned by Constellation, competition between ABI and Crown will decrease because Constellation is a less aggressive competitor than Modelo. (Compl. ¶¶ 9-10.)  According to the Complaint, Modelo has supported aggressive pricing by Crown because Modelo seeks to drive sales volumes to cover its manufacturing costs.  (*Id.* ¶ 73.) Plaintiff alleges that Constellation, on the other hand, historically has desired to raise Crown's prices in response to ABI's price increases, but has been stymied by Modelo.  (*Id.* ¶¶ 72-73, 77.) Plaintiff alleges that "[p]ost-transaction, Constellation would no longer be so constrained." (*Id.* ¶ 74.)

Thus, Plaintiff's theory hinges on an analysis of whether Crown, once it is wholly-owned by Constellation post-transactions, will be a less competitive participant in the alleged market for the sale of beer in the United States.  This plainly is a question implicating Crown and Constellation, in addition to the Defendants.

### 3. Will the Vertical Supply Agreement Between ABI and Crown Harm Competition?

Further, Plaintiff alleges that the Amended and Restated Importer Agreement between ABI and Crown, pursuant to which ABI will supply Crown with Modelo beer post-transactions, will harm competition by (1) facilitating coordination between ABI and Crown and

(2) reducing innovation by ABI.  (Compl. ¶¶ 67, 78.)[5]  First, Plaintiff alleges that the supply

agreement will facilitate coordination by creating "countless opportunities that *could* creatively

be exploited, and that *no one could predict* or control, to allow ABI to reward Constellation (or

refrain from punishing Constellation) in exchange for Constellation raising the price of the

Modelo brands."  (*Id.* ¶ 78 (emphases added).)  According to the Complaint, ABI *could* punish

Constellation by "terminat[ing] the contingent supply agreement at any time" or by

"withhold[ing] or delay[ing] supply to punish Constellation."  (*Id.* ¶ 83.)  Plaintiff's second

theory is that the supply agreement will reduce innovation because it precludes ABI from

"launching a 'Mexican-style Beer' in the United States."  (*Id.* ¶ 67.)

All of these vertical issues form common questions for the Defendants, as well as

Constellation and Crown.  Indeed, not only were these issues the subject of extensive scrutiny

during the DOJ's investigation (again, in which Constellation and Crown were parties), but the

same subjects will be a central part of Plaintiff's case and involve many of the same (and likely

additional) Constellation and Crown witnesses.

> **4.    Whether There Can Be Any Anticompetitive Effect from the Transactions, Given the Vigorous Level of Competition in the High-End Beer Segment?**

Finally, if the Court reaches the issue, it will have to decide whether the proposed

transactions will have any anticompetitive effect in the high-end beer segment.  This question

will center around the substantial competition that exists in the high-end beer segment, which, in

addition to Corona, includes Heineken, Dos Equis, Blue Moon, Tecate and a wide variety of

craft and imported beers.  Because Crown sells Corona in the high-end segment, and will

---

[5] Notably, Plaintiffs do not allege a traditional vertical foreclosure Section 7 case, which is understandable as Crown will have *more* access to supply of Modelo beer as a result of the proposed transactions.

continue to do so post-transactions, this is a common question that implicates Constellation and Corona as well as Defendants.

## CONCLUSION

For the foregoing reasons, ABI and Modelo respectfully request that this Court grant Constellation's and Crown's motion to intervene.

Dated: February 8, 2013                           Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,          */s/ Steven C. Sunshine*
                                                   Steven C. Sunshine (D.C. Bar No. 450078)
  by                                               Gregory B. Craig (D.C. Bar No. 164640)
        */s/ Richard J. Stark*                     SKADDEN, ARPS, SLATE,
Richard J. Stark (USDC Bar No. MI0010)                MEAGHER & FLOM LLP
      Yonatan Even (*pro hac vice admission*       1440 New York Avenue, N.W.
            *pending)*                             Washington, DC 20005-2111
                                                   Tel: (202) 371-7000
825 Eighth Avenue                                  Steven.Sunshine@skadden.com
   New York, NY 10019-7475                         Gregory.Craig@skadden.com
      (212) 474-1000
         rstark@cravath.com                        James A. Keyte (*pro hac vice* pending)
         yeven@cravath.com                         Karen Hoffman Lent (*pro hac vice* pending)
                                                   SKADDEN, ARPS, SLATE,
*Attorneys for Grupo Modelo S.A.B de C.V.*            MEAGHER & FLOM LLP
                                                   4 Times Square
                                                   New York, NY 10036-6522
                                                   Tel: (212) 735-3000
                                                   James.Keyte@skadden.com
                                                   Karen.Lent@skadden.com

                                                   *Counsel for Anheuser-Busch InBev SA/NV*

16

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2013, I caused the foregoing document or paper to be filed with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record. I also caused the foregoing document or paper to be mailed via electronic mail to counsel listed below:

> Mary Strimel
> David Gringer
> United States Department of Justice
> Antitrust Division
> 450 Fifth Street, N.W., Suite 8700
> Washington, D.C. 20530
> mary.strimel@usdoj.gov
> david.gringer@usdoj.gov
> *Counsel for the United States*

> _/s/ Steven C. Sunshine_
> Steven C. Sunshine (D.C. Bar No. 450078)

> *Counsel for Anheuser-Busch InBev SA/NV*

17